**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

WILLIAM GIBSON, ET UX.                        CIVIL ACTION

VERSUS                                       NO. 12-686-SDD-RLB

UNITED STATES OF AMERICA,
ET AL.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by the Defendants, United States of America and the Federal Emergency Management Agency (FEMA) (collectively "Defendant" or "Government"). Plaintiffs, William Gibson ("Mr. Gibson") and his wife Rita Gibson ("Mrs. Gibson) (or collectively "Plaintiffs") have filed an *Opposition*[2] to the motion and a *Cross Motion for Partial Summary Judgment*[3] to which the Government filed a consolidated *Opposition* and *Reply.*[4] Each party also filed *Reply* briefs.[5] For the reasons which follow, the Court finds that the discretionary function exception bars this suit and the Court lacks subject matter jurisdiction over this case. Thus, the Government's motion should be granted, and Plaintiffs' motion should be denied.

## I.    FACTUAL BACKGROUND

---

[1] Rec. Doc. No. 27.

[2] Rec. Doc. No. 31.

[3] Rec. Doc. No. 32.

[4] Rec. Doc. No. 34. The Plaintiff likewise filed a *Reply*. Rec. Doc. No. 36.

[5] Rec. Doc. Nos. 31 & 34.

Mr. Gibson and his brother own Gibson Brothers, a business that subcontracted with FEMA to activate[6] trailers for use by victims of Hurricanes Katrina and Rita and then de-activate[7] the trailers once the occupants moved out.  Following deactivation, Gibson Brothers would haul the trailers to various FEMA sites in Louisiana, Mississippi, and Texas, according to the orders of the various FEMA contractors.  The Government contends that carrying out these duties obviously required Mr. Gibson to frequently enter and exit FEMA trailers.  Mr. Gibson testified that when he entered a trailer without a climbing device, he would back up to the trailer's doorway and "hop" up to a seated position in the doorway facing outwards.  While in this position, Mr. Gibson would turn his body into the trailer and stand.  To exit such a trailer, Mr. Gibson would simply reverse this maneuver by sitting in the front doorway with his legs hanging outside and hop off onto the ground below.[8]  During the five years that Mr. Gibson worked under this FEMA subcontract, he estimated that entered and exited more than one hundred FEMA trailers.[9]

On November 1, 2010, approximately one month after Gibson Brothers' subcontract with FEMA had expired, Mr. Gibson visited the premises of a FEMA facility located on Sherwood Forest Boulevard in Baton Rouge, Louisiana.  This lot contains many formerly-occupied FEMA trailers distributed by FEMA after Hurricanes Katrina and Rita.  The

---

[6] Mr. Gibson testified that "activation" of FEMA trailers consisted primarily of hauling trailers to a designated site; blocking and leveling the trailer; constructing and attaching wooden steps and/or ramps to the trailer for ingress and egress purposes; running the sewer line; and connecting electrical power to the trailer. *See* Rec. Doc. No. 25-3, p. 4 (Deposition 1 of William R. Gibson, p. 30).

[7] Mr. Gibson testified that "deactivation" of FEMA trailers required Gibson Brothers to clean the inside of the trailer and remove the trailer and trailer materials to a designated FEMA storing area. *See* Rec. Doc. No. 32-3, p. 2 (Deposition 1 of William R. Gibson, p. 16).

[8] Rec. Doc. No. 27-1, p. 3, citing Deposition 1 of William R. Gibson, pp. 70-75.

[9] Rec. Doc. No. 27-2, p. 4 (Deposition 1 of William R. Gibson, p. 30).

purpose of this visit was for Mr. Gibson to inspect a particular mobile home[10] owned by FEMA that was going to be available for an upcoming on-line public auction.

While at this facility, Mr. Gibson claims he was supervised and accompanied by FEMA employee Joan Johnson ("Johnson"), who was charged with assisting potential customers around the facility as they evaluated the trailers available for purchase.  Mr. Gibson inspected four or five trailers on this date that had only an open door several feet above the ground with no set of pull-out steps for access.  Mr. Gibson further claims that, despite being a man of nearly 400 pounds, Johnson retrieved an aluminum stepladder from her vehicle for Gibson to use when entering and exiting these trailers.[11]

Next, Mr. Gibson claims that, upon completing his inspection of the last trailer/mobile home, he attempted to exit by descending the ladder.  Mr. Gibson contends that he tried to get Johnson's attention so she could come hold the ladder for him, but she was some distance away on her cell phone.  Mr. Gibson alleges that he held on to the door frame of the trailer[12] and attempted to step down the ladder placing his left foot onto the ladder rung two or three rungs down from the top.  He was able to place his right foot securely on the ladder as well, but as he attempted to step down with his left foot, Mr. Gibson fell to the ground landing on his back.[13]  Mr. Gibson claims that, as a result of this fall, he has

---

[10] Mr. Gibson contends there is a distinction between a trailer and a mobile home in that trailers are equipped with a set of pull-up steps, and mobile homes are not.  Rec. Doc. No. 31, p. 2.

[11] According to Johnson, she first provided Mr. Gibson with a two-step plastic stool to enter and exit the trailers, but Mr. Gibson requested the ladder after using this stool a few times.  Rec. Doc. No. 27-4, pp. 8-9 (Deposition of Joan Johnson, pp. 29-30).

[12] Although Mr. Gibson contends he does not use the terms "trailer" and "mobile home" interchangeably, he does so in this memorandum.  Rec. Doc. No. 31, p. 2.

[13] Rec. Doc. No. 31-2, p. 20 (Deposition 1 of William R. Gibson, p. 111, lines 1-15).

suffered ongoing severe and debilitating injuries.  Mr. and Mrs. Gibson have filed suit

against the United States to recover monetary damages under the Federal Tort Claims Act

("FTCA").[14]

Johnson's account of this incident differs somewhat from Mr. Gibson's.  Johnson

testified that Mr. Gibson used a two-step stool to gain access to the first few trailers he

inspected, and then he asked for the ladder after seeing it in her vehicle.[15]  As to the last

trailer, Johnson claims she did not place the ladder in front of the trailer, or ever hold or

touch the ladder for this particular trailer.  In fact, Johnson stated that she did not assist Mr.

Gibson with any trailer that he inspected on this date.[16]  Johnson further testified that she

observed Mr. Gibson grab both sides of the doorway to balance himself as he stepped out

onto the ladder, but, rather than descending the ladder backwards, Mr. Gibson descended

facing forward with his body turned away from the ladder.[17]  Johnson witnessed Mr. Gibson

fall and testified that she instinctively reached out her hands to help break his fall; however,

Johnson pulled back realizing she could get hurt by trying to break the fall of a man Mr.

Gibson's size.[18]

Johnson contends that, as he lay on the ground, Mr. Gibson yelled out that he thought his

leg was broken.  According to Johnson, she immediately called for assistance, and several

---

[14] 28 U.S.C. § 2671, *et seq.*

[15] Rec. Doc. No. 27-4, pp. 8-9 (Deposition of Joan Johnson, pp. 29-30).

[16] *Id.* at p. 16 (Deposition of Joan Johnson, p. 85).

[17] *Id.* at pp. 17-18 (Deposition of Joan Johnson, pp. 44-45).

[18] *Id.* at p. 23 (Deposition of Joan Johnson, p. 40).

FEMA employees arrived to help and assist in transferring Mr. Gibson into an ambulance.[19]

The Government has moved for summary judgment arguing that the discretionary function exception to the FTCA applies to the conduct alleged in this case such that this Court lacks subject matter jurisdiction over this lawsuit.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[22]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's

---

[19] *Id.* at p. 20 (Deposition of Joan Johnson, p. 51).

[20] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[22] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

response."[23]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[24] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[25] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[26] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[27] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[28]

## B.    Discretionary Function Exception

As the sovereign, the United States is immune from suit, except to the extent that

---

[23] *Id.* at 1075.

[24] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[25] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[26] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[27] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

it has waived its immunity and has consented to be sued.[29]  The FTCA acts as a limited waiver of sovereign immunity allowing the United States to be sued for "injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[30]  Courts strictly construe waivers of sovereign immunity and resolve all ambiguities in favor of the sovereign.[31]  Under the discretionary function exception, the waiver of immunity does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[32]  Plaintiffs have the burden of proving subject matter jurisdiction by alleging a claim that was facially outside the discretionary function exception.[33]

Whether the discretionary function exception applies involves a two-part inquiry. First, the act must "involve an element of judgment or choice."[34]  This first part is met "[i]f a statute, regulation, or policy leaves it to a federal agency or employee to determine when

---

[29] *F.D.I.C. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

[30] 28 U.S.C. § 1346(b); *see United States v. Muniz*, 374 U.S. 150 (1963) (confirming the right of a federal prisoner to sue under the FTCA for injuries received during incarceration).

[31] *Lane v. Pena*, 518 U.S. 187 (1996).

[32] 28 U.S.C. § 2680(a); *see Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005).

[33] *See St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

[34] *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, (1988)) (internal quotations, alternations, and citations omitted).

and how to take action [.]"[35]  If there is a violation of a mandatory regulation or policy, then the discretionary function exception will not apply, because "there was no element of judgment or choice," and thus "the employee has no rightful option but to adhere to the directive."[36]

On the other hand, if there was room for judgment or choice in the decision made, then the challenged conduct was discretionary.[37]  In such a case, the second step of the test requires a court to evaluate "whether the conduct is of the kind that the discretionary function exception was designed to shield" from liability.[38]  The discretionary function exception is meant "to prevent judicial 'second-guessing' of ... administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."[39]

The discretionary function exception's scope extends beyond high-level policymakers, and includes government employees at any rank exercising discretion.[40]  "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions."[41]  Even where government action is taken on the day-to-day operational level, and implements broader governmental

---

[35] *Freeman*, 556 F.3d at 337.

[36] *Berkovitz*, 486 U.S. at 536.

[37] *Id.*

[38] *Gaubert*, 499 U.S. at 322-23.

[39] *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

[40] *Id.* at 813. ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.").

[41] *Gaubert*, 499 U.S. at 325.

objectives, if that action involves choice or judgment that is "susceptible to policy analysis," then it falls within the discretionary function exception.[42]  Courts also consider the fact that, '[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."[43]

In this case, the Government contends that all of the alleged acts of omission and commission by Plaintiffs are directed toward FEMA rather than Johnson, and that the exception applies to each and every allegation.  Plaintiffs' *Complaint* alleges that the Government was "negligent, grossly negligent, and reckless" in the following ways: failing to provide stairs with handrails to invitees to inspect mobile homes for sale; failing to follow safety regulations promulgated by FEMA by not providing hand rails for stairs to enter mobile homes; failing to provide a solid surface upon which to place stairs or ladders when entering a mobile home for inspection purposes; providing an underrated ladder to invitees to gain access to Defendant's mobile homes; failing to follow general safety regulations in the industry; failing to properly train employees on regulations required for invitee safety when viewing the property; failing to properly supervise employees, while employees are showing prospective buyers the property; supplying employees with underrated ladders to give to invitees to inspect mobile homes; failing to train and supervise employees in the proper techniques to spot and hold ladders, for invitees being given ladders; failing to require employees to hold ladders firm, while invitees are exiting mobile homes; failing to

---

[42] *Id.*

[43] *Id.* at 324.

properly supervise employees who were constantly using cell phones for personal calls and not properly attending and monitoring invitees; failing to prevent personal cell phone usage by employees while at work; and such other negligence, gross negligence, and reckless acts that will be shown... ."[44]

Plaintiffs contend that the conduct alleged in this case was neither a policy decision nor an exercise of discretion in furtherance of public policy goals; thus, the exception cannot apply. Plaintiffs further argue that Johnson's alleged acts/omissions are not policy decisions or administrative actions and do not constitute supervisory or management decisions. Likewise, they are not susceptible to policy analysis according to Plaintiffs.

### 1. Element of Judgment or Choice

Plaintiffs have yet to direct the Court to any mandatory statute, regulation, or policy prescribing the specific course of conduct that removed the element of judgment or choice by Johnson. In their *Opposition*, Plaintiffs state that Johnson testified in her deposition that it would have been against FEMA policy for her to provide the ladder to Mr. Gibson.[45] However, nowhere in the cited pages of Johnson's deposition does she refer to such a policy, if one exists. Furthermore, Plaintiffs' own arguments as to this policy are contradictory. In their *Opposition*, Plaintiffs claim: "What's more, providing the ladder for Mr. Gibson's use was in specific violation of her agency duties, rendering it actionable under the FTCA and placing her actions far outside the reach of the DFE."[46] On the same

---

[44] Rec. Doc. No. 1, pp. 5-6.

[45] Rec. Doc. No. 31, p. 6.

[46] *Id.* at p. 12.

page, Plaintiffs state: "FEMA did not develop a policy or inform its patrons that they had a duty to supply their own method of entry and exit into the trailers. Instead, FEMA equipped its employees with ladders, like the one in this case, to provide patrons inspecting the homes for sale."[47] Notwithstanding the fact that Plaintiffs have never cited any formal regulation or policy upon which they rely, these two statements clearly conflict. On the one hand, Plaintiffs argue that Johnson acknowledged a "specific" FEMA policy not to provide a ladder to prospective buyers that she allegedly violated. On the other hand, Plaintiffs later state that FEMA did not have a policy regarding method of entry and exit and, furthermore, FEMA equipped its employees with ladders to provide for inspection. Plaintiffs cannot have it both ways. While the Government refers to FEMA's "no assistance" policy or directive, the Court remains uncertain of the actual language of the directive and where this policy is provided to the Court in the record of this case.[48]

Regardless, Johnson's testimony does not support Plaintiffs' position. Specifically, when asked by which means FEMA sales people provided access in and out of the trailers for sale, Johnson testified in response: "We actually didn't provide it. We work with ladders, and we work with aluminum ladders and a two-step – well, I prefer the two-step stool. And if someone wanted to use it, they can use it. But just to say that this is for you to get into the trailer, no, we don't have that."[49] When questioned whether FEMA had any rules of

---

[47] *Id.*

[48] Even if the parties could identify a specific policy which required that Johnson not assist Mr. Gibson in getting in and out of the trailers, such a policy would clearly be susceptible to policy analysis.

[49] Rec. Doc. No. 40-1, pp. 28, lines 22-25 & p.29, lines 1-2 (Deposition of Joan Johnson).

operation applicable to management of the site, Johnson responded: "I'm quite sure there is rules – ... yeah, there's rules and policies. There's a board that shows you safety things that you should do and not do, and as one of them – one of them is how to use the ladder. You always go into it face up and then you'd come back down backwards."[50] Herman Jones, who works for FEMA as a logistics management specialist and sales lead, was also present at the site on the day of Mr. Gibson's accident. Jones testified that it was not the FEMA representative's responsibility to assist a potential buyer into and out of a trailer.[51] When asked "[i]s that the policy, official policy in November of 2010," Jones responded that it was but that this policy was not written down anywhere.[52]

The Court simply cannot find that such a general unwritten and unidentified guideline, not provided by any party to the Court in its specific language and requirements, is sufficient to deprive the Government of the protection of the discretionary function exception.[53] The Fifth Circuit has held that "[a] policy may direct general policy goals, such as determining compliance with certain guidelines, but when the policy fails to prescribe **'specific direction'** as to what course of action an employee must follow, it generally fails to establish a nondiscretionary duty."[54] Moreover, general duties to promote safety are

---

[50] *Id.* at pp. 74-75.

[51] Rec. Doc. No. 45-2, p. 55, line 10 (Deposition of Herman Jones).

[52] *Id.* at p. 55, lines 14-18.

[53] *See Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993).

[54] *Lopez v. U.S. Immigration and Customs Enforcement*, 455 F. App'x 427, 433 (5th Cir. Dec. 21, 2011)(quoting *Freeman v. United States*, 556 F.3d 326, 339-40 (5th Cir. 2009)(emphasis added).

insufficient to erase any discretion.[55]  The allegations of this "no assistance" policy are too broad and conclusory for the Court to conclude that any of the conduct alleged to have been committed by Johnson was specifically prescribed or prohibited, such that all discretion was removed from her job function.

In any event, the Court agrees with the Government that providing a ladder is not the same as personally assisting an individual to climb, descend, or otherwise use the ladder.  Under either party's version of events, *i.e.*, whether Johnson provided the ladder or Mr. Gibson requested the ladder, it is clear from the record that Johnson did not assist Mr. Gibson in the manner in which he used the ladder.  The Court further finds that the conduct alleged did involve an element of judgment or choice on the part of Johnson.

### 2. Susceptible to Policy Analysis

The Court likewise finds that the acts and/or omissions allegedly committed by Johnson were related to the purpose of FEMA's regulatory regime to sell deactivated FEMA trailers to the public.  Johnson's decisions under either party's account, whether Johnson offered the ladder or Mr. Gibson took it, were part of the decision making process regarding how to offer and ultimately sell FEMA trailers to the public.  Decisions regarding how to execute this program include decisions about what equipment to use, or not use, in implementing that program and what cost effective measures are taken in that regard.  The Court finds that, how to provide, or even not to provide, access to the trailers is sufficiently related to the purposes FEMA sought to accomplish in offering these trailers to the public

---

[55] *See Bragg v. United States*, 55 F.Supp.2d 575, 583 (S.D. Miss. 1999), citing *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1026–27 (9th Cir.1989).

for sale.

The Court agrees with the Government that whether to build steps or not to provide for access to these trailers is an operational decision related to FEMA's implementation of offering these units for public sale. Practicality and costs are certainly policy considerations touching on these decisions. Clearly, the cost of rebuilding steps for all of the trailers would have seriously cut into the net price FEMA obtained from the sale of these units. Thus, FEMA's desire to "liquidate the mobile homes as inexpensively as possible"[56] as argued by the Government is a clear policy consideration.

To the extent there exists a "no assistance" policy by FEMA with respect to aiding potential buyers in inspecting the trailers, such a policy is also clearly susceptible to policy analysis for the reasons presented by the Government. Noting the legal implications for such a policy, the Government contends that FEMA choosing a "hands off" approach with assisting potential buyers in their inspection of the trailers lessens the chance that an employee could place FEMA at risk for falls that might occur in the entering and existing these trailers. The Court takes no position on the correctness, soundness, or implementation of such a policy, but finds that such a policy is easily susceptible to policy analysis.

### 3. Applicable Jurisprudence

In *Kohl v. United States*,[57] a certified bomb technician sued the United States under the FTCA, seeking recovering for injuries allegedly sustained due to the negligence of a

---

[56] Rec. Doc. No. 34, p. 5.

[57] 699 F.3d 935 (6th Cir. 2012).

federal employee operating a winch while collecting debris generated by the planned detonation of explosives during a government-funded research experiment. The district court dismissed the case under the discretionary function exception. Kohl appealed to the Sixth Circuit.

Kohl was a certified bomb technician with the Nashville Police Department who participated in a research experiment funded by the United States Department of Defense, which involved constructing and detonating explosive devices in vehicles and then collecting post-blast debris for laboratory analysis as forensic evidence.[58] Following one such test, Kohl and Officer Todd Mask approached a minivan for inspection. Kohl searched the passenger's side, but Mask's attempt to open the driver's side door was in vain because it had "buckled" during the explosion. The team attempted to gain access to the driver's side by using a winch on the driver's side door. Kohl returned to the passenger's side door and continued searching for evidence when she felt "pain in the top of [her] head" and "saw stars."[59] Allegedly, due to the winching, the door came loose and the vehicle's door frame crashed into Kohl's head.[60] Kohl sought medical care and was diagnosed with post-concussive syndrome with persistent headaches and cognitive changes."[61] Kohl sued the Government under the FTCA claiming that federal employees were negligent in operating the winch in an unsafe manner, failing to warn her of dangers regarding the

---

[58] *Id.* at 938, citing 2011 WL 4537969 at *1.

[59] *Id.* (internal citations and quotation marks omitted).

[60] *Id.* at 939.

[61] *Id.*

winch, conducting the operation, including winching, of the vehicle without proper safety protocols, and failing to use reasonable and due care to prevent injury to the plaintiff.[62] The district court applied the discretionary function exception and dismissed Kohl's claims for lack of subject matter jurisdiction.

The Sixth Circuit provided meaningful guidance on the analysis of the alleged tortious conduct.[63] The court stated that, "[t]he issues of whether the ATF employee who operated the winch was negligent, and whether the safety precautions taken were reasonable, are separate inquiries from the analysis of the discretionary-function exception."[64] The court continued: "'It is the governing administrative policy," rather than the negligence of a particular employee, 'that determines whether certain conduct is mandatory for purposes of the discretionary function exception.'"[65] Specifically, the court noted:

> Thus, the conduct at issue must be framed in terms of the scope of administrative authority to use discretion in executing the research experiment. More properly formulated, the conduct at issue is "the recovery of forensic evidence and the necessary actions taken to facilitate that recovery, including actions taken to dislodge the door of the minivan so that evidence could be recovered." *Kohl*, 2011 WL 4537969, at *7. Our analysis thus focuses on whether ATF's actions in collecting the forensic evidence from the field test, **including decisions about what equipment to use**, are

---

[62] *Id.*

[63] *Id.* At 941. The court found too broad the Government's emphasis on the context in which the alleged injury occurred in arguing that decisions related to how best to conduct the experiment involved policy-related judgments and were thus shielded from liability. However, the court also stated: "Kohl's formulation of the conduct at issue is inappropriate for the same reason: by framing the question as whether the ATF employee operated the winch in a safe manner, Kohl 'begs the question'." *Id.* at 942.

[64] *Id.* at 942.

[65] *Id.*, quoting *Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993).

protected by the discretionary-function exception.[66]

With respect to the first prong, neither party had argued that there was a mandatory policy or regulation at issue; thus, the court found that the challenged government conduct involved discretion.[67]  As to the second prong, the court quoted *Gaubert* by noting that "[w]here an act 'cannot be said to be based on the purposes that the regulatory scheme seeks to accomplish,' the discretionary-function exception will not apply."[68]  Thus, the court determined that "the key question in this appeal is whether the conduct at issue was sufficiently based on the purposes that the regulatory regime - here the research experiment - sought to accomplish."[69]  Noting that this was a close case, the court ultimately concluded that "[t]he decision to use a winch was part of the decision making involved in deciding how best to conduct the post-blast investigation."[70]

The court further explained:

The planning and execution of the research experiment is susceptible to

---

[66] *Id.* (emphasis added).

[67] *Id.*, citing *Berkovitz*, 486 U.S. at 536.

[68] *Id.* at 943, quoting *Gaubert*, 499 U.S. at 325 n. 7.  The court noted, for example, that the *Gaubert* Court "used negligent driving by a government actor on government business as an example of conduct that would not be shielded by the discretionary-function exception."  *Id.*  "Driving a car, while it 'requires the constant exercise of discretion,' is not sufficiently connected to regulatory policy to fall within the discretionary-function exception."  *Id.*

[69] *Id.*

[70] *Id.*, *cf.  Konizeski v. Livermore Labs (In re Consol. U.S. Atmospheric Testing Litig.)*, 820 F.2d 982, 993–95 (9th Cir.1987) (finding that claims of negligence for failure to maintain sufficient safety precautions during "inherently dangerous" field testing of nuclear weapons were barred by the discretionary-function exception); *Creek Nation Indian Hous. v. United States,* 677 F.Supp. 1120, 1124–26 (E.D.Okla.1988) (finding, in a case involving an explosion of bombs being transported by a commercial carrier, that the discretionary-function exception barred negligence claims against the United States for alleged failure to take adequate safety precautions regarding transportation of explosives).

policy analysis, including judgments about how to respond to hazards, what level of safety precautions to take, and how best to execute the experiment in a way that balanced the safety needs of the personnel and the need to gather evidence from the vehicles.[71] Decisions about how to execute the experiment include judgments as to what kinds of equipment to use to extract the evidence for forensic laboratory analysis. These equipment-related decisions were "intimately related" to the execution of the field experiment—in other words, judgments as to how to extract the evidence from the vehicles after the bombs were detonated, including what equipment to use, were necessary to the execution of the project.[72] Thus, a challenge to the use of a particular piece of equipment, *i.e.*, the winch, would amount to a challenge as to the overall execution of the research project.[73] The conduct at issue is thus unlike the *Gaubert* Court's example of driving a car in connection with a government mission; the ATF employee's use of the winch was sufficiently related to the purposes that the post-blast investigation sought to accomplish to fall within the discretionary-function exception.[74]

The court also noted that it had "previously concluded that in executing a government program, the government's decision as to what equipment to use and how to use that equipment fall under the discretionary-function exception, absent government standards or directives."[75] The court found Kohl's argument that the conduct fell outside of the exception because it involved machine operator error "of no avail"[76] because of the

---

[71] *Id.* (*See Rosebush*, 119 F.3d at 444 (explaining that even if there is no indication "that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis") (citing *Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir.1986))).

[72] *Id.* at 943-44. (*See Graves v. United States*, 872 F.2d 133, 137 (6th Cir. 1989).

[73] *Id.* at 944 (*See Bultema*, 359 F.3d at 383).

[74] *Id.*

[75] *Id.*, citing *Totten v. United States*, 806 F.2d 698, 701 (6th Cir. 1986)((holding that decisions regarding the kinds of equipment used and the manner in which fuel was removed following a missile-test failure were shielded by the discretionary-function exception); *see also Flynn v. United States*, 902 F.2d 1524, 1530–31 (10th Cir.1990) (holding that the discretionary-function exception barred claims against National Park Service employees for negligent operation of emergency lights on emergency vehicles because there were "no fixed standards for training or use of emergency vehicles").

[76] *Id.*

Supreme Court's holding that "the fact that the decision making involved occurred on an operational level does not affect the analysis."[77] Clearly, "[t]he discretionary-function exception protects both high-level policymakers and the employees who implement broader governmental objectives."[78] Relying on *Gaubert* and *Varig Airlines*, the court concluded:

> These cases make clear that the discretionary-function exception protects decisions at the operational level, including choices like the one ATF employee Guerrero made in this case about when to use a winch. Because ATF employees had discretion to decide how best to conduct the field test, including which equipment to use, the decision to use a specific piece of equipment in this particular situation, *i.e.*, to use a winch to open the door of the minivan, also falls within the government's discretionary decisions. This is so even if Guerrero was negligent in using the equipment—the discretionary-function exception protects even abuses of discretion. 28 U.S.C. § 2680(a) (stating that the FTCA does not apply to claims based on discretionary functions, "whether or not the discretion involved [was] abused"). Kohl's claims against the United States for negligence during the research experiment are thus barred by the discretionary-function exception.[79]

The Court recognizes that *Kohl* is not binding authority, but the Court is persuaded by the reasoning and analysis in *Kohl* as applied to similar factual allegations involving the alleged negligence of a government employee in the use (or misuse) of equipment. Furthermore, all of Johnson's choices, even if erroneous, were clearly discretionary decisions made at the operational level which are protected by the discretionary function exception because those decisions were all related to the purpose sought to be accomplished by FEMA – the sale of the disaster relief trailers.

---

[77] *Id.*, citing *Gaubert*, 499 U.S. at 325; *Varig Airlines*, 467 U.S. at 820.

[78] *Id.*

[79] *Id.* at 945.

The Court also finds the Fifth Circuit's decision in *Lively v. United States*[80] applicable to this case. In *Lively*, several stevedores allegedly injured from exposure to asbestos imported for stockpiling by the Government brought suit under the FTCA. The district court for the Middle District of Louisiana dismissed the claims for lack of subject matter jurisdiction based on the discretionary function exception. The plaintiffs appealed.

The *Lively* plaintiffs were longshoremen working on the docks of the Baton Rouge Port Commission in Port Allen, Louisiana. Between 1959 and 1966, they were exposed to raw asbestos which they had helped unload from ships traveling to South Africa. The asbestos had been imported for stockpiling by the General Services Administration (GSA). The Administrator of the GSA was authorized by statute to make purchases and provide for the storage security and maintenance of the materials.[81]

The plaintiffs alleged that the United States was liable for their injuries because it negligently failed to warn them of the danger of exposure to asbestos and negligently failed to provide proper equipment to reduce this danger.[82] The Fifth Circuit affirmed the district court's application of the discretionary function exception, finding:

> The activities at issue in this case are the decision to stockpile the asbestos; the decisions regarding the manner of procuring the asbestos, including the decision not to place warnings on the bags; and the decision not to provide or require safety equipment or safety programs for the stevedores. The decision to stockpile asbestos was an administrative decision grounded in social, economic and public policy.

---

[80] 870 F.2d 296 (5th Cir. 1989).

[81] *Id.* at 297.

[82] *Id.*

.  .  .

The G.S.A.'s choice of procurement policies also is within the exception.  As we stated in *Ford v. American Motors Co.*:  "Both the evaluation of actual or suspected hazards and the decision to proceed in a particular manner in light of those hazards, are protected discretionary acts not subject to tort claims ..."  770 F.2d 465, 467 (5th Cir.1985).  Consequently, in *Ford* we held that the Government's decision to sell used United States Postal Service jeeps to the public without warning of the vehicles' propensity to roll over was a discretionary act exempted from FTCA liability.  Like the Postal Service in *Ford*, the G.S.A. in this case chose to proceed with a program without warning of the hazards of the substance to which it was exposing the public.  G.S.A. had the authority to promulgate specifications for purchasing asbestos, including specifications for packaging the material. When it exercised its authority, G.S.A. chose not to require a warning on the asbestos packages. Like the decision to stockpile the asbestos, the procurement policies are within the discretionary function exception.[83]

The Court finds that, for the same reasons set forth in *Lively*, the decision by FEMA to sell FEMA trailers to the public and the manner in which to implement such a program, including the decision not to provide stairs, constitute administrative decisions clearly grounded in social, economic, and public policy.  FEMA was not required to warn every potential buyer of every potential danger relating to the inspection of the trailers.  Thus, the Court finds that the discretionary function exception to the FTCA applies to the all of the conduct allegedly committed by Johnson on behalf of FEMA in this case.

III.    **CONCLUSION**

For the reasons set forth above, the *Motion for Summary Judgment*[84] by Defendants,

---

[83] *Id.* at 298.

[84] Rec. Doc. No. 28.

United States of American and the Federal Emergency Management Agency (FEMA), is GRANTED. The Court lacks subject matter jurisdiction over this case based on the discretionary function exception to the Federal Tort Claims Act. Plaintiff's case is dismissed with prejudice. The Final Pre-Trial Conference set for September 9, 2014 is hereby CANCELLED. The Bench Trial set for September 22, 2014, is also CANCELLED. All other pending motions are denied as moot.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana, on <u>September 3, 2014</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**